I now turn to Case 20-1230, Land Shark Shredding v. United States. Mr. Whitcomb, whenever you're ready. Good morning Chief Judge. My name is Joe Whitcomb and I am representing Land Shark Shredding, the appellant in this case, and protester in the underlying bid protest. The issue that Land Shark is asking the court to decide today, we believe is a case of first impression related to the term in 38 U.S.C. 8127, fair and reasonable price that offers best value to the United States. I think the court is aware that in the underlying case, what's happened in this protest is that the Veterans Administration competed a document destruction contract under the Federal Supply Schedule or GSA Schedule, which we believe is governed by 8.404 in this case, but the government argues is governed by 8.405 2D. The VA ultimately rejected Land Shark's price submission as being unreasonable based on two tests that applied. The first test was that Land Shark's price exceeded the independent government cost estimate, and the second test was that it was the highest price offered above. But understanding, the court should understand that there were only a total of three prices submitted, one price only won by a service-disabled veteran-owned small business or an SCVOSB. Can I just ask you on your theory of the case, and this goes to really what the statute, I'm focused more on what the statute says and what it requires and what it means to us. What's the upper limit? Is there an upper limit at all to how much you could have bid under your theory? Your Honor, yes, I think that there is an upper limit, and I think that upper limit would be a price at which it would be arguably illegal for the government to make an award. And in this instance, that's clearly not the case because the pricing that was submitted by Land Shark, that Land Shark submitted, sorry, was 35% lower than its GSA-approved schedule pricing. Wait a minute, let me just ask you, I don't understand the question. The question is, you say if it would be illegal, but that begs the question about, so what would be illegal? What criteria do we use to assess whether it's illegal? So, Your Honor, Land Shark's position would be that, and we believe Part 31 speaks to this, which would be whether a price was so high that no prudent person, and we briefed this in our reply brief, that no prudent person, and we would argue that the GSA is in fact a prudent person or a prudent entity, would pay the price for these services. Now, for example, if Land Shark had submitted a price that was higher than the government had ever paid for document destruction on a per-bin, on a per-unit basis, remember, Your Honor, this contract was competed on a per-bin basis, and if the government, or sorry, if Land Shark had submitted a price that was higher than the government had ever paid for these services, I think the government would be perfectly, it would be perfectly allowable in those circumstances for the government to reject that price. If Land Shark's price had come in 150% of its GSA's government price, or above its GSA pricing, then I believe the government would certainly have a basis for challenging Land Shark's pricing as unreasonable. But in this instance, all it has done is found that Land Shark's pricing was unreasonable because it exceeded an IGCE, which was based entirely on a predecessor contract, which was performed by a large, multinational, publicly traded company. We don't have that many of these cases, and I guess the government can respond to this too, which is the relationship between this FSS GSA pricing and what goes on in the individual contracts. Is there anything, and there's so much paper in this area, so many FAR provisions, is there anything that relates the reasonableness of a particular bid in a particular contract to this FSS GSA funding thing? Your position is that's what the bottom line is for reasonableness, and I'm just wondering if in all of these rules and regulations that the government, that's ever called out. First of all, yes, Your Honor, it is. Under 8404, the regulations governing GSA schedules, federal supply schedules, it states expressly that the GSA has in fact reviewed these prices and found them reasonable, and therefore the contracting officer does not need to do an additional review. We offered that in our briefings at the lower court and in this court, and the government has responded with, well, that doesn't mean the contracting officer can't do a review, and we can see that. It doesn't mean that the contracting officer can't do a review. We just believe that the only legal conclusion that the contracting officer could come to is that these prices are fair and reasonable because they have been previously approved by the GSA. Now, the government has also advanced an argument that in this instance there's a statement of work, so therefore 8404 doesn't apply, and our position is, well, wait a minute, that would be true if the statement of work made the requirements of the contract less onerous than Landshark competed in the GSA schedule. I think, Your Honor, the question that Your Honor is asking is what would be the basis? We would offer that under 8127, the very first basis of reasonableness is competition, and that's why the statute first requires that the contracting officer have a reasonable expectation of getting two offers, and secondly, that it has an expectation. And we believe that whether you read those two phrases together or apart, they come to the same conclusion, which is you have to have a reasonable expectation. The contracting officer has to have a reasonable expectation of getting two offers, and you could say, therefore, being able to make an award at a reasonable price, or even if you argue separately that being able to make an award at a reasonable price. But competition is the first tool that the contracting officer has to use as to whether or not the price is fair and reasonable. Now, under the GSA schedule, that competition is vetted in advance. As I'm sure the Court is aware, getting on a GSA schedule is not as simple as submitting a proposal and having GSA adopt it. The GSA spends months vetting. I don't understand. I just want to be – I'm not arguing with you. I just want to make sure I understand your point. Your point, in addition to the GSA schedule being the limits on the test for reasonableness, your position is because we're only here because at least there are two competitive bids going on, then that somehow satisfies the reasonable test as well? Yes, Your Honor. We would say that where there is competition, both FAR Part 13, FAR Part 15, all lead contracting officers first to review whether there's competition. And if there is competition, normal market forces result, absent collusion, result in – competition results in fair and reasonable pricing. In the GSA schedule – now, to be clear, in this case, Landshark was the only service-disabled veteran-owned small business that vetted a proposal. But it was – its pricing was – there are three other or four other schedule holders on the Federal Supply Schedule that are SDVOSBs, and Landshark's pricing is competitive with those other three. And the GSA has already vetted those pricing and has authorized a price 35 percent higher than the price Landshark submitted in this proposal as being fair and submitted that it is fair and reasonable. Again, the government's argument is, well, this particular procurement has a statement of work. Therefore, the 8404 finding that this price is fair and reasonable doesn't apply. But it does so without arguing – the government does that without arguing that this procurement is somehow less onerous or less burdensome to Landshark, and therefore its pricing should be even lower. In fact, if anything, this particular statement of work adds requirements in the form of it requires Landshark to destroy pill bottles and not just documents. It requires that the destruction be done on-site as opposed to being able to be done off-site. It requires a number of things that Landshark – and it requires that a certificate of destruction be submitted and so forth. All of these things are perfectly normal, but Landshark is also operating under the restraint that neither its small business competitor or its large competitor are operating under, namely 13 CFR 125.6, which is the limitations in subcontracting, which cut against the government's argument that Landshark could just subcontract a massive portion of this contract out to whomever it pleases and reap the rewards of that. That's just not – I disagree with that argument. I mean, you're arguing that you operate under different circumstances. I don't know how to apply that as a matter of law, that we apply the standard of reasonableness, but we include in our analysis of reasonableness that your bid might be 500 percent higher than the next bid, but then we evaluate subcontracting issue and all of this stuff. Can you just articulate what your argument is in that regard? Yes, Your Honor, we can, and on page 29 of our reply brief, we actually point to case law on this front, which is – and I'm quoting – it's a fundamental principle of government procurement that competition must be based on an equal basis, that is, offers must be treated equally and be provided with a common basis for the preparation of their proposals. Landshark was the only one of the three offers operating under the requirement that it not subcontract more than 50 percent of the contract value to other situated contractors. And that means not just other contractors in this instance. It means not just contractors that are service-disabled, self-described SDVOSBs for short, but also that they had to be – the subcontractors, in order to be able to contract out more than 50 percent, had to be verified and listed in the VET-Biz database, which I'm sure this Court is aware of. And neither SHRED-IT nor the Small Business Concern State Court were required to do that. So, again, Landshark is – and again, the mandate under 8127, as we understand it, Your Honor, is that it starts with the government shall award. And it qualifies that shall award, as long as the contracting officer has a reasonable expectation of receiving two offers and being able to make an award at a fair and reasonable price. We would ask that this Court – what we're asking is that the Court – So, this is Judge Urano. Yes, Judge. But 8127 does more than that. It goes beyond determining whether there's two or more SDVOSB submitters. And it goes on to Clause Number 2 that says that the award can be made at a fair and reasonable price. So, we're looking at price, not conduct or difficulty, that is, of performing on the contract. We're looking at price. And in this case, it appears that the price is five times more than the person on the next level. You made a lot of argument, but you haven't gone to the – to what I see as being the crux of the matter here is, you know, was the price that was submitted? Why is the determination that the award cannot be made at a fair and reasonable price that offers the best value to the United States – why is that wrong? Well, Your Honor, we believe – I'm sorry. Your Honor, I believe that it's that very bar that we're here to argue about is what is the determination that a price is fair and reasonable. In other words, if Landshark's prices need to be competitive with large concerns in order for it to reap the benefit of the set-aside, then it doesn't need the set-aside, right? The case law is sufficient that it demonstrates that the government understands that it is going to pay a premium in order to award to socioeconomics, be it SDVOSBs or 8As or women-owned, in order to advance the policy of awarding to these socioeconomics. It could be, but the statute puts a limitation on that. And the limitation is that the award – they must ensure that the award can be made at a fair and reasonable price that offers the best value. Here, Landshark had a price of over $2 million, and that was five times higher than the prices by the other offers. We would first submit, Your Honor, that the other offers had no business being invited to invite or to bid because it was an SDVOSB set-aside. And secondly, that we would argue that their pricing is irrelevant to the calculus of whether the price is fair and reasonable. Again, the GSA has already determined that this price is fair and reasonable, right? And under the only definition for fair and reasonable found anywhere in the FAR is that for a price not to be fair and reasonable, it must exceed a price that any prudent person would pay for the services. A prudent person in this instance is the GSA. They have concluded that this price is fair and reasonable under the circumstances and generally. Is it fair for me to say, then, that your argument is that the use of this tiered evaluation system is illegal? Well, we have argued that both at the lower court and here, Your Honor. But we believe that whether it's legal or not is irrelevant to the argument here because it would have been relevant if, for example, no service-disabled veteran and small business had bid. That would have given the government another place to go. But in this instance, there was an SDVOSB that submitted. That SDVOSB price was qualified by the GSA, and it was, therefore, in our view of the world, therefore fair and reasonable. And what we're trying to get away from, Your Honor, what we're asking this court to determine and decide is that if the fair and reasonable pricing is based on anything other than competition between other SDVOSBs, then it is inherently prejudicial to SDVOSBs because they have to operate under very different circumstances than small businesses or large concerns. Whether we're talking about economies of scale or whether we're talking about the rules and regulations that they operate under, they are operating under a very different environment. And Congress wrote this law in 2006 to include the word must, and the Supreme Court ruled in 2016 that shall means must, rather to use the word shall. In 2016, the Supreme Court ruled that shall means must, and Judge Thomas, in the opinion, started with 8127, instructs the government, says the government shall award. Now, again, the qualifiers are that there be fair and reasonable, but we believe that this fair and reasonable pricing has so far been left completely up to the discretion of the contracting officer. And we believe that there are other restraints to include whether the GSA has already found that price is fair and reasonable, whether the government has already paid previously. I mean, land shark shredding has, at any given time, 25 or 30 different contracts being performed at this price in different parts of the country. What the government has done, we believe, is read into the statute to say fair and reasonable under these unique circumstances, or best available price instead of fair and reasonable price. And that is not the mandate of the statute. Can I just interrupt in following up on what Judge Rayner was asking about? Not only does the statutory provision we're debating here include the standard, the award can be made at a fair and reasonable price. It continues to say, and you're saying this reasonableness standard is set by GSA, and as long as that is met and not exceeded, it is by definition reasonableness. That's what I understand it to be. But the statute continues to say that offers best value to the United States. And that is another kind of word that gives the U.S. discretion, some discretion, to what the best value is to the United States. There might be two offers that, under some theory, are fair and reasonable, but they're supposed to pick the one that offers the best value to the United States, right? We have to give that language some meaning, right? Well, Your Honor, yes, and I do. And I believe that the meaning has to extend to all of the policies of the United States, which include awarding contracts. The purpose of this statute was to award contracts to service-disabled and veteran-owned small businesses. In other words, the mandate loses all of its meaning if the contracting officer's discretion of determining what is fair and reasonable under those circumstances is given full effect. Now, it's easy to imagine a scenario, or many scenarios, in which the contracting officer could contrive an IGCE or find other reasons to find that the SDV OSB's prices are unreasonable. And again, I think that in this instance, it's easy to point out that it's some percentage higher than IGCE or some percentage higher than the next lowest offer, but it's not higher than the government has paid SDV OSB's for these goods and services all over the country. And we would say that what we've been arguing is that when the contracting officer under 8127 is making the determination that a price is not fair and reasonable, that what that contracting officer is doing, by extension, is saying, it would be illegal for us to make this contract award because that's the restraints that 8127 puts on the contracting officer. We would say, you shall award unless you cannot. Okay. Any further questions by my colleagues? No. Okay. Why don't we hear from the government, and we'll restore some rebuttal time. If you may please, the court. Landshark Shredding, preliminarily, Landshark Shredding offers a construction of the Rule of Two that we believe does not actually mean a mandate to automatically award to Landshark at disproportionately high prices. We want to step back a little bit and point out that the Rule of Two is an initial set-aside determination. That happens up front by the VA in determining whether or not competition should be restricted, or, in other words, to be set aside for SDVOSBs or VOSBs once those two prompts are met. One, the reasonable expectation that you'll get two or more of these quotes, and then the award can be made at a fair and reasonable price. What we're really talking about is the price evaluation that comes later. That is a distinct and separate inquiry. And regarding the actual pricing arguments that Landshark has made in its argument, I would like to point out that we believe those are waived because they were not discussed in its opening brief. The opening brief was focused almost exclusively on this idea that the Rule of Two is a mandate to automatically award to Landshark regardless of total price. And I believe the court's question at the beginning was sort of, hey, what is the upper limit to the award? And Landshark responded that if the award would be illegal. And we'd submit that illegal means if it violates the Anti-Sufficiency Act, it's one of those outer bounds. But essentially, the Landshark's opening argument was the award could be made at any price simply because a set-aside determination was made at the outset of a procurement. And now, in its reply brief... Sorry, was there a question? Yeah, Counselor, this is Judge Reina. I was going to follow up with what you were just saying and point out that your opponent also is arguing that some economy of scale problems should also be considered when looking at the Rule of Two and its application. Are you aware of any economy of scale problems that were in effect here in this case? I don't believe so at all, Your Honor. That is simply pure attorney argument from Landshark that somehow SDV OSBs are more disadvantaged than anybody else. And we'd like to point out here the...it takes pot shots at the independent government cost estimate, for example. But that IGCE was actually built off small business prices who are primarily on the federal supply schedule. So it's simply another category of small business where the owner happens to be a service-disabled veteran. So other than pure attorney argument, there's nothing in the record or nothing in this particular procurement that establishes sort of the difficulties that Landshark is saying that it has in being able to, I guess, adequately price a procurement or price a contract or perform the work. Okay. Now, turning...does that answer your question, Your Honor? Yes, thank you. I'm sorry if you've already covered this. This is Judge Prowse. But they argue...what about your friend's argument about how if the amount of money is on the FFS GSA schedule, then the government has already made a determination of reasonableness. So anything within those numbers ought to be sufficient to satisfy that requirement. Your Honor, we submit that the GSA pricing is irrelevant when the solicitation clearly stated that the quotes...the government was requesting quotes from the offerors for them to price the work and that the government in the solicitation would be evaluating those quotes to each other to then determine best value. And essentially, the FFS pricing is irrelevant. And Landshark's confession that a review can be done by the contracting officer should be dispositive here. Again, in its opening brief, it said there was no discretion. It actually said that the...I believe the quote is that the contracting officer could not set aside and then make an ex post facto determination later that the prices were too high or that they were unreasonable. And now it's conceding that the review can actually be done. And that's the review that was specified in the solicitation. And that's the review that controls. The contracting officer looked at Landshark's quote in that first tier of SBVOSB. He compared it to the next small business who was in their third tier. There was no...better known small business tier or offerors. And then compared that to the large business tier. And in that comparison, simply found that 500% higher prices were simply unreasonable. And especially in the context of the IGCE, which, again, was based on FFS pricing, which was...which is primarily made up of other small businesses. And that IGCE actually was generated...you got to look at that in the context of the previous contract. That was for about $250,000 versus about the $500,000 or so that is that now. And for less shredding. But even those shredding quantities previously were sometimes less per year. So there are more than...there are several markers of performance or reasonable cost performance for this procurement. The contracting officer looked at those and, again, found that price was just too far out of line with what had been submitted. And to go with sort of Landshark's theory that sort of adequate competition will determine what fair and reasonable pricing looks like, that is a typical method that is used. And if that was applied here, it's clear that Landshark is, again, entirely off the mark with the 500% higher prices. And it also points out that the scope of work required some additional things that were beyond the typical sort of per bin pricing that is listed on the GSA schedule. But ultimately, Landshark and all the other offerors were responsible to put their best quote forward, and the government evaluated them accordingly. But to go briefly back to the point I was attempting to make before the questions came, but on the pricing, the change in tactic here by Landshark, it still seems to be keeping its Rule 2 argument mandate alive. But it claims the question in the reply as simply whether its prices were fair and reasonable. And for all the reasons we've discussed, we don't believe there's any basis to find that 500% prices are offering best value to the government or best value to the United States. Now, there are some other issues at play here because we've also talked about waiver, standing, and whether or not the Rule 2 was actually satisfied here. As far as the Rule 2 being satisfied, point out that Bill Landshark has argued that the Rule 2 was actually satisfied here to restrict competition. The trial court, the VA found the opposite. It found that the market research was inconclusive to be able to restrict competition. And that was clear on the face of the solicitation. And it's apparent when we look at the market research. The contracting officer actually published an RFI, a request for information, and only one SDVOSB responded. That was Landshark. There were only two other SDVOSB responses. And true to the market research, only one SDVOSB responded to the solicitation. So in the set-aside analysis on that first prong, the contracting officer did not even have a reasonable expectation that two or more of these categories of businesses were likely to submit a quote. Therefore, the Rule 2 was not satisfied. Instead, and still to the benefit of SDVOSBs and VOSBs, it used the cascading order of precedence, giving them essentially preference but being able to award at other tiers depending what prices ultimately came in. And if the Rule 2 was not satisfied and this court agrees, then Landshark's arguments regarding the Rule 2 and whatever it says about pricing should not even actually apply here. It doesn't get any benefit from its own construction of the rule to mandate award here. And that issue... What's your opinion? This is Judge Ray. What's your opinion on the statute where it says the award can be made at a fair and reasonable price? It's got to be something more than the best price or the lowest price, correct? Doesn't fair and reasonable infer that there's considerations other than the lowest price? Well, I think it's somewhat parallel to typical sort of a best value. Obviously, the statute could have said the lowest price, but that's obviously not what's being considered. But it does leave discretion to the contracting officer to determine what is fair and reasonable or what could be fair and reasonable prices enough to set aside competition to SDVOSBs. So at some point, maybe even economies of scale or the competitiveness of a small business, ability of a small business to compete in a particular area, that could be elements considered in an inquiry involving fair and reasonable price, wouldn't you say? That's possible, Your Honor. If there's information in the record, if there's market research conducted, if there's knowledge with the contracting officer on, again, sort of like what they know about what prices look like. In this instance, we're talking about document shredding services. It seems to me that that's what the statute is talking about. It is talking about looking at something other than just the lowest price. But I'm not sure that in this particular case that a case was made or arguments were persuasive that such competitive factors or economies of scale factors exist in this case. We would agree with that, Your Honor. And I would say that the extent that Lanshark has raised these are really policy arguments about what the rule of two should be doing to help veteran-owned businesses or service-disabled veteran-owned small businesses. And that's not something this court can address. And that should be directed to Congress ultimately. And the Lanshark's brief is laden throughout with these policy arguments for which there are no clear answers that this court can provide. But, again, there is no record here. Excuse me. If I can interrupt. This is Judge Hughes. I want to ask you a hypothetical. And I know that these facts aren't in this case. But let's assume the rule of two was met here and that there were two service-disabled contractors that the contracting officer felt could submit bids. But they went ahead and still did a cascading off the system and allowed bids from small businesses, big businesses, everybody. And the two service-disabled businesses came in, let's say, 50% over the next lowest price from the small business. Would it be proper for the contracting officer to say this is not fair and reasonable by comparing the service-disabled businesses to the small businesses? Or would the contracting officer first have to determine there are two qualified service-disabled offers. Looking at them alone, is one of them fair and reasonable and should we award? Are you also including similar language that is in the cascading language that was included in the solicitation here, Your Honor, in that hypothetical? Everything else is the same. Yes. You know, I think this is the point. But because... Let me just make it clear, though. Because there are two service-disabled businesses that have submitted bids, the contracting officer has determined that it should be set aside for service-disabled businesses. But for whatever reason, goes ahead and uses a cascading solicitation as well. Well, I think in the first instance, having the cascading combined where the Rule 2 is satisfied, I don't think necessarily violates 8127D. And the difference here is that obviously it is using a clear set-aside and the intent is to award in that first tier of businesses. Sort of what the evaluation is becoming later... Sure, sure. Okay, I'm not... This is not what the hypothetical is. Let me... I don't want to pull my punches. What I'm getting at is when there's a cascading solicitation and there are two or more service-disabled businesses, can the contractor in determining whether the award should be made to a service-disabled business, can it compare the offers from their service-disabled businesses with the rest of the cascading offers and say, this is not fair and reasonable because they're higher? Or does it first have to look and determine whether in isolation the service-disabled bids are fair and reasonable? Well, if it's like this solicitation here and it permitted the ability of the contracting officer to compare them across tiers to determine best value across competition of these other tiers, I think it would be permissible. But it may be preferred to do it to the first tier just across SDVOSB. If there's independent cost estimate, they can compare that to there. But here, if it allowed for sort of this broader evaluation... No, no. This is why I'm asking a hypothetical because I don't think the Rule of Two is met here. So I think the cascading is fine. But I'm concerned when the Rule of Two is met that you're making the fair and reasonable determination based upon comparison with non-similarly situated offers and whether that is proper under the statute or whether you have to make the fair and reasonable determination just based upon whether the two service-disabled businesses are acceptable. And this is presuming that the FSS doesn't automatically make them acceptable and everything else. I'm just concerned that when you use these cascading things, suppose both service-disabled businesses come back. Let's make the hypothetical slightly more complicated. Everybody comes back within 10% of the government estimate, either under or over. And the service-disabled are both slightly over and about 10% or 15% over the small businesses. I mean, the government can award over a cost estimate. I think you agree. Why, if they're required to set aside, would the fact that it'd be 10% over and only 10% or 15% over the other bids make it not fair and reasonable? I would really answer your question, Your Honor. I don't believe 10% or 15% would necessarily be unreasonable. That would be up to the contracting officer. I believe there's a GEO case law that Landshark cites in Camden in its reply brief that may talk about some of the areas where there is some sort of range in these contracts where the contracting officer can award above an IGCE or where there could be somewhat of a premium simply to get an FDVOSB in place. So 10% to 15% might be within that range, but there may be other considerations, sort of like there was here in the Companion case where there's only so much funding available and you can't actually award at that price. That is a different question, but there could be sufficient factors to find fair and reasonable prices with that type of price premium. Obviously, that's not what we have here with 500% higher prices, but that contracting officer is ultimately going to have that discretion. To pay a little bit extra to get those to a sort of FDVOSB or VOSB tier. I believe my time is up. Unless there are any further questions, we have briefed all the other remaining issues in our briefs regarding standing and the waiver doctrine, but I believe we've discussed thoroughly the primary thrust of Landshark's arguments. Thank you. Thank you. Mr. Whitcomb? I don't know if we can. How much rebuttal time does Mr. Whitcomb have? Hello? Joe Whitcomb is here. I'm not sure if I have any. I'm remaining, Your Honor, because I don't... Well, we'll give you three minutes no matter what you have left. Hopefully, that's more than you have left. We'll give you three minutes. I agree, Your Honor, and I thank you. One point I want to raise is that the government advanced two ideas, which I believe are internally inconsistent. One is that the federal supply schedule was not relevant because it announced that it was going to do a price analysis, and it later related, the government later related, that it... Mr. Whitcomb, why don't you pause for a moment? Sure. I'm sorry to interrupt. I just got disconnected, so I was going to answer your question about how much time was remaining. How much time is remaining? None of the time is remaining. Okay. Well, we've restored Mr. Whitcomb three minutes, so thank you. Okay. I apologize. Okay. Thank you. Please proceed, Mr. Whitcomb. I'm sorry. Go back. No, it's fine. Thank you, Your Honor. So, the government advanced two ideas. One is that the federal supply schedule was not relevant because it announced that it was going to do a price reasonable analysis and announced cascading pricing. The second thing that the government argued was that it relied on the federal supply schedule in putting together its price estimate, its IGCE, but what is clear that the government did not do. So, I think the idea, and what I'm hoping the court will conclude, is that this idea of the set-aside was sort of disingenuous because the federal supply schedule provided the government all the data it needed to come up with an independent government cost estimate. Namely, it had four SDVOSBs who were on the schedule that announced in the federal supply schedule what its price per bin would be, or at least the upper threshold of what the price per bin would be. But instead, the government looked across the entire universe of 51 offers under the federal supply schedule and came up with a number that looked like $98,000 a year. If it had limited its research, if its intent to set aside was genuine, it would have limited its research to just what SDVOSBs would be under this case and put its price estimate together accordingly. But it didn't do that. It looked at the entire universe. So, I think, again, if the government, if the VA, in this instance, had been authentic in its desire to set this contract aside for service-disabled veterans, one, it had four verified SDVOSBs on the schedule. The pricing for those SDVOSBs was announced for the world to read, and it didn't look at it. It didn't restrict its analysis of its estimate. So, its basis for its estimate on what this contract would cost under an SDVOSB set-aside was based on what the predecessor concern had done. It argues that it looked at the universe of price offerings, but it averaged those out, and it averaged all 51 out and came up with a number that is very different from the number it would have come up with if it had looked at just what SDVOSBs had priced. If it had looked at what SDVOSBs have charged for this service on the USA Spending Database, it would have come up with a very different number. But that's where we believe that the IGCE was arbitrary and whimsical, as the definition of capricious means, and, therefore, subject to change and not predictable for an SDVOSB to know what it's competing-up against what it's competing. Okay. We have your argument. Thank you. Thank you. Thank you. We thank both sides, and the case is submitted. The Court will pause momentarily to set up the next argument. 21-231, Landshark Shredding v. United States. Mr. Whitcomb, you're back. Yes, Your Honor. I am back. If it pleases the Court, again, I'm Joe Whitcomb, and I represent Landshark Shredding, the appellant and plaintiff in this case, and the underlying bid protest. Again, we're still arguing about the same statute, 38 U.S.C. 8127, and what it means in a different context. In this case, the difference between this and the previous case is that this contract was competed on what was then FBO, FedBizOpps. It was set aside similarly to the previous case in that it was another cascading. But in this instance, there were – oh, I'm sorry, there was no cascading. But in this instance, there were two offers, both SDVOSBs, and their pricing was rejected as being not fair and reasonable. And in this instance, based only on the government's independent government cost estimate, which it later conceded was in some ways flawed, and it changed the IGCE on more than one occasion. But again, in that instance, even under the flawed analysis, it was – the government relied on dissimilarly situated offers or predecessor contracts as a basis for its cost estimates, namely invoices from the predecessor contract as a basis for its analysis of the independent government cost estimate. Again, I'll offer first what I offered last in a previous argument, which is the government had better resources for determining what it should have expected from SDVOSB offers on this contract, namely the entire universe of offers that is publicly available to the government under USA Spending, under its own internal databases, what it has paid other – So Landshark's position on this case is that creating an estimate not based on SDVOSBs is arbitrary and capricious as it relates to Congress' intent under 38 U.S.C.A. 8127. We would argue that the cancellation of this solicitation and the recompetition was illegal because Landshark's – again, this has the trappings of the hypothetical that Judge Hughes raised in the previous case, which was, in this instance, there was no cascading. The rule of two was satisfied. It was set aside. There were two offers, which has that baked-in competition, which should, under Part 13 and 15, give the government confidence that the pricing was fair and reasonable. The government's – a couple of reasons the government has offered for refusing Landshark's pricing was – It was simply rejected because it exceeded the IGCE. The IGCE, or Independent Government Cost Estimate, was, in this case, based entirely on a predecessor's – the predecessor contract, which I believe in this case was shredded, but it was – which is a large, multinational, publicly traded company. And it argued that it exceeded – the government argued that Landshark's pricing exceeded available funding. It is trying to advance the argument that awarding to Landshark would have been a violation of the Antideficiency Act, but Landshark's reply to that is the Antideficiency Act relates to the government's allotment of money for the entire year. There is no allotment of – the congressional allotment of money covered under the Antideficiency Act. You're not answering my question. I'm sorry. The question was, was there a fair or a reasonable explanation as to why Landshark's price was so much higher? The first answer to that, Your Honor, would be, again, it's a small business. It's operated – Landshark's business is operated by a profoundly disabled veteran who – but – which is why these set-asides exist in the first place. But secondly, Landshark – and again, as we advanced in our previous argument – operates under a different set of rules than other small businesses and certainly different from large concerns. It doesn't – so a large concern, like shredded, for example, is not restricted in the amount of business that it subcontracts. It's not restricted in any of those things. There's no regulation that governs the amount of self-performance it does. Landshark – if Landshark is not going to self-perform, the very best that it can do if it gets a large concern or a small business concern that's not an STV OSB, the very lowest price it can offer is – under 13 CFR 125.6 – is twice the price of its subcontractors offer to it. So that's one explanation for why STV OSBs are – if they're having to subcontract the contract – would be a higher price. But also the fact that, you know, Landshark – unlike a company like shredded or Iron Mountain – when it goes in to perform under most contracts, it's required to start from scratch. It's got to go buy all new containers, for example, as opposed to being able to transfer containers over. It might have to buy other vehicles. Clearly, Landshark is not advancing the idea that the government should shoulder all of those additional costs, but we're arguing that comparing Landshark to large concerns in its IGCE – I'm sorry, I misspoke. Comparing Landshark to large offers is unfair because, again, it is an unequal, uneven playing field. Landshark has to play under different rules, has to, in many instances, start from scratch as opposed to a large company or a multi – you know, a large company like shredded or Iron Mountain. It has additional costs incorporated, obviously, and it doesn't get to operate with the economies of scale. Let me ask you. This kind of combines what we were talking about in the previous case with Judge Hughes' hypothetical. As you pointed out, this gets closer. Let's assume we meet the rule of two and we don't have cascading. Is it your view – or I don't know if cascading matters. Is it your view that the statutory fair and reasonable standard and best value of the government standard is only with respect to comparing the two offerers in this case? So even if both of the people that met this rule of two came in with $10 million, that the contracting officer would be evaluating just as between the two of them? Is one fair and reasonable? Is one more fair and more reasonable? Your Honor, I would suggest that the only flaw in the – so the hypothetical of two offers came in at $10 million. One was $9 million and one was $10 million. But everybody else, if it had been open, let's say hypothetically, we all have in our instinct that everybody else would have bid a million. So is it still fair and reasonable because the only thing we can compare are the two offers against each other as opposed to what other bidders that don't meet the rule of two would have come up with? I'm suggesting, Your Honor, that the cost comparison between two STVOSBs is not the only tool available to the contracting officer, but it is when incorporated with other tools. Like our suggestion is – Landshark's suggestion is that the test for fair and reasonable, it would be that the price is so outrageous. And, again, not as compared to non-STVOSBs, but compared largely to what the government has paid for these goods and services in the past. And, again, Landshark has been awarded many contracts in the past at similar pricing. So, again, I think that's where the hypothetical that Your Honor offered of the $10 million goes – is a little – it's difficult to analyze because, again, this – it's different from this hypothetical in that – So I would suggest the answer to your question is no. In the instance where one is $5 million and one is $10 million, the government could reject it under other basis, like it's never paid that price before. No prudent person would ever pay it because no one ever has, as an example. But in both the predecessor case and – or the previous case and this case, the government has paid that price. There was – so all we're trying to get to is that the fair and reasonable price is a low bar, a lower bar than the government is bringing, a low bar for the contractor to get over. Not an exceptionally high bar. Again, the government – Landshark had no idea at onset of this contract what the IGCE was. It couldn't know, right? All it knew for sure is what it would cost it to perform. And it offered a – and, again, competition and market forces are supposed to be the thing that drives fair and reasonable pricing, right? And if the government were, in your honors hypothetical, started to award contracts at $5 million, I assure you it wouldn't be doing it for very long because there would be a rush to the market. There would be a rush to the market that would drive down pricing. But in this instance, there were two offers. Those two offers were competitive with other pricing that SDVOSBs have paid in the marketplace. And so, therefore, the government's finding that this price was not – that Landshark's price was not fair and reasonable and rejecting it is contrary to law because its finding that it was not fair and reasonable was based on an arbitrary standard of a predecessor contract, a dated predecessor contract offers five years ago under very different circumstances. And that was its only basis for finding that Landshark's price – because it didn't have the benefit in this instance, your honor, of the other offers pricing until after it canceled Landshark's – canceled the solicitation that Landshark competed under and recompeted it in this instance. And that's what makes this case different from the previous case. All right. Unless my colleagues have further questions, why don't we hear from the government? Thank you, your honor. May it please the court? Yes, your honor. I just wasn't sure if I was supposed to start. May it please the court? The primary focus of the second Landshark appeal is the decision that the lower court made that its claim should be dismissed for lack of standing. And that's where all these issues come up about Kingdomware. Kingdomware is its defense to its lack of standing. Just to get first into our primary argument, our argument is that they lack standing because their proposed price exceeds available funding. And for that reason, they never had a substantial chance of receiving an award. As the trial court explained, Landshark cannot demonstrate that it had a substantial chance of being awarded a contract because the agency had the right to establish the level of funding. And Landshark's offer was more than four times that funding level. Courts have routinely concluded that they have neither the authority nor the expertise required to instruct an agency on how to conduct its internal affairs. And this type of interference would improperly remove management authority from the agency to which Congress delegated that authority. Landshark's apparent response to that issue is remarkable. Without explanation or support, it has simply argued that the funding levels are largely irrelevant. And it has referred to the Kingdomware. Kelsa, this is for Joanna. Have we ever held that available funding is a criteria for evaluating standing in a bid protest case? Your Honor, I don't think the court has held that. Okay. But I'll just note that Mr. Whitcomb this morning talked about Kingdomware as a decision that mandated the government to do something differently with its ICGE. And Kingdomware speaks to a discrete period of time in the procurement process. It doesn't address the time before the contracting officer makes a decision about whether to restrict competition. And it doesn't deal with, you know, the award decision. It deals with the decision about whether competition should be restricted. And so Kingdomware is not the answer to the government having some requirement to develop its ICGE in a different way than it has. In this case, I'll also just note that the ICGE was not ultimately the basis for the contracting officer's corrective action decision. She took another look at the record and decided that the ICGE was flawed and decided to take corrective action by doing a different analysis as to whether the pricing was fair and reasonable. And she did a historical comparison and a regional comparison. And still under those comparisons, she concluded that the pricing that was offered was not fair and reasonable. I'm sorry. This is Judge Hughes. Given that, I don't understand your standing argument here. I mean, their argument is once the contracting officer sets this aside because it was determined that there were two service-disabled businesses that could submit bids, that the statute required an award to one of them. Now, whether we agree with that argument or not, that's a merits argument. But don't they have standing to make that argument and say that the contracting officer's determination that this wasn't fair and reasonable was wrong on the merits because, A, the statute required it, and also there are additional arguments about the supply schedule. That, to me, all seems like merits arguments, not standing arguments. Your Honor, I think perhaps at a certain point it crosses into merits, but there are a lot of arguments that Landshark has made that basically are to the effect that the agency has to raise the price that it's willing to spend on this project, essentially. Sure. That's entirely their argument that, you know, you can't look beyond the bidding prices of the service-disabled businesses, particularly if they're confirmed by the federal supply schedule and have been paid at that rate before. And if that argument is correct, then the government's independent estimate is irrelevant. And I don't understand your anti-deficiency argument at all. Congress could, if it wanted to, say, we don't care, the agency doesn't have discretion to develop an independent estimate for service-disabled businesses. And all it can do is look at the prices that have been qualified on the supply schedule, and if there are two or more service-disabled businesses on the supply schedule, you have to choose one of those prices. Congress could do that, right? Could Congress write a statute like that? Yes. I think so. Well, of course. I mean, there's nothing unconstitutional about it or anything. And Congress could say, we want to give service-disabled businesses as big of an advantage as possible. And as long as they're qualified on the supply schedule and they perform these services, you have to pick from them, no matter how much it costs you, as long as it fits within your appropriations. That's what you have to pay. And that's, you know, I'm sure that your friend on the other side would take exception with the way I've described it, but if that's their argument, they have standing to make that argument, don't they? And we have to address that argument on the merits. Well, I, you know, I guess I still see an issue of, you know, I mean, what we're talking about, and I know my colleague was more precise about standing in his brief in terms of making a distinction between Article III standing and what we sometimes call statutory standing. But, I mean, what we're talking about is whether they can show that they're an interested party by either the substantial chance test or the weak marine test. And making that, so we're not talking about Article III standing, we're talking about, you know, zone of interest or whatever you want to call it, that they have a substantial chance of winning the thing. But in determining that, we have to look at the legal arguments they're making, do we not? And under their legal arguments, they would have a substantial chance of an award. I mean, you can't pre-decide the legal merits and then say, under our statutory construction, you would never get the award because you're way outside of our independent estimate. Their argument is your independent estimate has to be disregarded because the supply schedule should be what controls. Well, Your Honor, I guess it seems to me that it's so far afield to say that Kingdomware and the statutory provision that it's construing actually establishes that they're an interested party in this case. That it seems like trying to shoehorn substance into something where, you know, it just so clearly doesn't belong. I don't understand that answer at all. Are you saying... I'm sorry, Your Honor. Are you saying that their statutory interpretation is so incorrect that whether they would qualify or not for under that award, it's so incorrect that it just can't be considered in determining whether they're standing? I'm sorry. I'm saying, first, it strikes me as very incorrect, but there's also the fact that I don't think it's... I mean, just because the court is getting into whether or not they're an interested party because of Kingdomware, I'm not... that doesn't strike me as a merits argument. That's looking at whether they're an interested party because Kingdomware entitled them to an award. Okay. Anything else? If the court has no further questions, I'm not sure if I have time left, but if the court has no further questions, I'm happy to cede the rest of my time. Okay. I don't hear anything from the panel. Thank you. Thank you. Mr. Whitcomb, I think you have a little time left for rebuttal. Thank you, Your Honor. Again, I think the position that Landshark is taking is actually a simple one in this instance, and that is that the Rule 2 in this case was satisfied. The government's argument so far has been that Landshark's pricing was not fair and reasonable because it exceeded IGCE, which we argue in this case... And again, I would only take exception to Judge Hughes's position that our argument is that the IGCE is in all instances irrelevant. I think if the IGCE were calculated based on what other SDVOSBs have charged for the goods or services in the marketplace historically, I think that would be a completely allowable IGCE. But using a non-SDVOSB, a non-small, a large business concern, and what it performed... Now, the government can argue, well, look, that's one of the things that the FAR allows the contracting officer to look at is historical pricing. We would say that's true. But it should not be allowed to use historical pricing as a means for sidestepping Congress's requirement that it award SDVOSBs when it can. And that's what appears has happened here. And in arguing that Landshark wasn't eligible for award because it exceeded an arbitrarily calculated funding limit, I think is unavailing here because that funding limit was not created consistent. It was just created solely on the contracting officer's estimate. The contracting officer had more than enough authority to go back and get additional funding if the contracting officer needed to in order to make the award. Congress's mandate is clear. The government must award when it can. And in this instance, the government clearly could have. I mean, the government would have easily... If we turn this around, had the government made an award to Landshark, it clearly would have survived a bid protest based on price reasonableness. If somebody else with a large offer had come along and said, hey, there's no way you can make this award to Landshark because its price is unreasonable because it exceeds what you paid in the past, the government would have clearly prevailed in that protest. Because it has the discretion to find that Landshark's price was fair and reasonable because it clearly paid that price in the past. What the government has done is make that argument in reverse and said, well, we can find that it's not fair and reasonable because we could get it at a lower price. And if the court has no other questions or concerns, I will arrest. Thank you. We thank both parties and the cases submitted. That concludes our proceedings for this morning. Thank you, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.